UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  10-20547-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ALBERTO ALVAREZ,

      Defendant.

_____/

<u>ORDER GRANTING MOTION FOR INQUIRY INTO CONFLICT OF INTEREST
AND
DETERMINING THAT DISQUALIFICATION IS NOT PRESENTLY REQUIRED</u>

This matter arose upon the Government's Motion for Inquiry Into a Conflict of Interest Regarding Counsel's Representation of Defendant Alberto Alvarez and Former Client Roberto Rodriguez, M.D. (DE # 166).  The Honorable Ursula Ungaro, United States District Judge, has referred this matter to the undersigned United States Magistrate Judge (DE # 176).  Defendant Alvarez has filed a Response (DE # 178), and a hearing was held on November 15, 2010.  At the conclusion of the hearing, the undersigned ruled, with the agreement of the parties, that Defendant Alvarez knowingly, voluntarily and intelligently waived the conflict, and that, based upon the decision of Defendant Alvarez to enter a guilty plea, disqualification of counsel was not required.  This Order summarizes the facts and legal conclusions announced at the hearing.

I.      <u>BACKGROUND</u>

Defendant Alberto Alvarez and nine co-defendants are charged with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; and, with making false statements for use in determining the eligibility of certain beneficiaries to payment by the Medicare program for home health care services, in violation of 42 U.S.C. § 1320a-

7b(a)(2) (DE # 3).  The Indictment alleges that Defendant Alvarez was a registered nurse who purportedly provided home health services to Medicare beneficiaries referred through clinics operated by co-defendant Jorge Dieppa (DE # 3 at ¶ 23).  The role of Defendant Alvarez, according to the Indictment, was to falsify patient records to make it appear that Medicare beneficiaries qualified for and received home health services that in reality were not medically necessary and/or not provided (DE # 3 at ¶ 11).   Pertinent to the conflict raised in the motion at bar, the Indictment specifically alleges, "Co-conspirators . . . would send patient recruiters and medicare beneficiaries to JORGE DIEPPA and another physician Roberto Rodriguez, to obtain prescriptions for home health services and signed POCs that were not medically necessary."  (DE # 3 at ¶ 7).  The physician Roberto Rodriguez, M.D. is NOT a co-defendant in this case, and is not the same person as the Roberto Rodriguez who is charged as a co-defendant in this case based upon his role as a registered nurse.

II.   <u>THE FACTS GIVING RISE TO THE CONFLICT</u>

The facts which form the basis for the Government's motion are not disputed. Defendant Alvarez has been represented throughout these proceedings by attorney Luis Martinez.   Attorney Martinez first appeared in this case on July 16, 2010, the date of the initial appearance of Defendant Alvarez  (DE # 26).

Roberto Rodriguez, M.D., the physician identified as providing fraudulent prescriptions and Plans of Care in paragraph seven of the Indictment, was previously represented by attorney Luis Martinez when Dr. Rodriguez was charged and pled guilty to offenses in another unrelated health care fraud case involving an HIV infusion clinic (Case No. 09-20138-CR-HUCK).  Attorney Martinez represented Dr. Rodriguez during those proceedings through the entry of a guilty plea on March 23, 2009, and two

debriefings which occurred thereafter on April 23, 2009 and June 9, 2009.  These debriefings concerned information regarding health care fraud in connection with HIV infusion clinics and home health care services, including information which led to the present Indictment.  On June 15, 2009, attorney Paul Petruzzi, Esq. replaced attorney Martinez as counsel for Dr. Rodriguez, and Mr. Martinez ceased his representation of Roberto Rodriguez, M.D.  On June 29, 2009, Dr. Rodriguez was sentenced to serve 97 months of imprisonment.

Dr.  Rodriguez has continued to cooperate with the Government, and although no promises have been made to him regarding any motion to reduce his sentence, the Government stated at the hearing that it was fair to assume that Dr. Rodriguez is hoping to receive a benefit as the result of his continued cooperation.

Dr. Rodriguez does not know Defendant Alvarez, and has no information that directly inculpates Defendant Alvarez.  However, Dr. Rodriguez is expected to be a witness in this case, and his testimony will directly incriminate co-defendant Jorge Dieppa.  Dr. Rodriguez' expected testimony will circumstantially incriminate Defendant Alvarez since his testimony is expected to directly support the government's theory that the Dieppa clinics were submitting false and fraudulent claims regarding home health care services on a large scale.

Dr. Rodriguez has declined to waive any conflict of interest arising from his prior representation by attorney Martinez (DE # 166 at 2).

### III.    THE WAIVER OF THE RIGHT TO CONFLICT-FREE COUNSEL BY DEFENDANT ALBERTO ALVAREZ

Defendant Alberto Alvarez has submitted an Affidavit in which he waives any conflict arising from the prior representation of Dr. Rodriguez by attorney Martinez (DE #

178-1).  At the hearing, Defendant Alvarez was placed under oath and provided testimony which confirmed his understanding of the consequences of the successive representation, and his desire to waive any conflict and continue to be represented by attorney Martinez.  He specifically confirmed his desire to enter a plea of guilty in this case, stated that this decision was his alone, and stated that the decision to enter a plea of guilty was not in any way influenced by that fact that his attorney had previously represented government witness Roberto Rodriguez, M.D.  He confirmed this waiver, despite the advice by the Court that his attorney would not be permitted to take any action adverse to the interests of Dr. Rodriguez.  Defendant Alvarez was advised that if he was unable to afford an attorney one would be appointed for him, and that the Court would give him the opportunity to consult with independent counsel prior to making any final decision regarding the waiver of his right to conflict-free counsel.  Defendant Alvarez advised the Court that he did not desire to consult with independent counsel. Both Defendant Alvarez and his attorney, Luis Martinez, confirmed that they had discussed the issue of this conflict extensively.

At the conclusion of the hearing, the undersigned found that Defendant Alberto Alvarez knowingly, intelligently, and voluntarily waived his right to conflict-free counsel, and desired to proceed with attorney Luis Martinez as his attorney in this case.

IV.    **CONCLUSIONS OF LAW**

A. **Introduction**

For the reasons set forth below, the undersigned has determined that presently retained defense counsel would be disqualified from representing defendant Alvarez if this case proceeded to trial and former client Roberto Rodriguez, M.D. was called as a government witness.  However, the concerns which lead to this result in the scenario of

4

a trial are not present with respect to the decision to enter a guilty plea.  Therefore, based upon the present posture of this case, the undersigned finds that the defendant's right to counsel of choice, combined with his waiver of any conflict, results in a determination that disqualification is not appropriate.   All parties concurred at the hearing that disqualification is not required under these circumstances.

　　　　B. <u>Framework For Analysis</u>

　　　　At the outset, the Court notes that the Sixth Amendment right to counsel encompasses the right to counsel of choice, and that courts should hesitate to override this presumptive right by disqualifying counsel.  In *Wheat v. United States*, 486 U.S. 153 (1988), the United States Supreme Court addressed the circumstances under which disqualification of criminal defense counsel is appropriate.  The Supreme Court held that a District Court may disqualify a criminal defendant's counsel of choice based upon a showing of a serious potential for conflict of interest, even where the defendant and the affected co-defendants/potential witnesses sought to waive the right to conflict-free counsel.  In reaching this result, the Court emphasized that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." 486 U.S. at 159.  At the outset of its analysis, the Court noted that a defendant could not insist upon an advocate who was not a member of the bar, nor could "a defendant insist on an attorney who had a previous or ongoing relationship with an opposing party, even when the opposing party is the Government."  486 U.S. at 159.  From this starting point, the Court reasoned that disqualification could also occur based upon the independent interest of the federal

5

Case 1:10-cr-20547-UU   Document 180   Entered on FLSD Docket 11/16/2010   Page 6 of 10

courts "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  486 U.S. at 160.  The Court recognized that "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Id.*  Thus, the Court rejected the claim that the provision of waivers by all affected defendants automatically cured the conflict presented by multiple representation.

In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Eleventh Circuit applied the rationale of *Wheat* to uphold the disqualification of counsel under circumstances which involved the successive, rather than simultaneous representation by counsel of persons with conflicting interests.  There, defendant's counsel of choice had previously represented a Government witness in a related criminal case.  That representation ended when the previous client entered into a plea agreement.  Under these circumstances, the Eleventh Circuit held that the District Court had not abused its discretion in refusing to accept the defendant's waiver of the right to conflict-free counsel.

In reaching this result, the Eleventh Circuit stated that the disqualification determination is based upon a balancing of the right of a defendant to be represented by counsel of choice and the right to a defense conducted by an attorney free from conflicts of interest.  The Court provided the following analysis to be used in arriving at the appropriate balance:

> The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial.  When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified. Indeed, even a

potential conflict suffices for disqualification. . . .

    . . . . If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, the disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest. In short, the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.

33 F.3d at 1523 (citations omitted).

    Likewise, in *United States v. Miranda*, 936 F. Supp. 945 (S.D. Fla. 1996), the Court disqualified counsel who had previously represented a government witness, finding that the present representation was substantially related to the prior representation of the witness, and that the interests of the cooperating witness, who sought to gain a reduction in his sentence as a result of cooperation, were adverse to the interests of the defendant. The Court also rejected the proposal that independent counsel be permitted to conduct the cross-examination of that witness, with conflicted counsel conducting the remainder of the trial. The Court concluded that this proposal would not be appropriate under the circumstances since it would not alleviate the "concerns with the public's perception regarding the fairness of the these proceedings and the integrity of the judicial process; and with the rights of [the witness previously represented]." 936 F. Supp. at 952.

    The rules of professional responsibility also provide guidance regarding the propriety of successive representation of clients. Rule 4-1.9 of the Rules Regulating the Florida Bar, which governs the permissibility of successive representation of clients, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except . . . when the information has become generally known.  For purpose of this rule, "generally known" shall mean information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.

As numerous cases have recognized, this duty of loyalty requires disqualification when a former client seeks to cooperate with the government and testify against the present client.  *See, e.g., United States v. Miranda*, 936 F. Supp. 945 (S.D. Fla. 1996); *United States v. Culp*, 934 F. Supp. 394, 398-99 (M.D. Fla. 1996); *United States v. Davis*, 780 F. Supp. 21 (D.D.C. 1991); *United States v. Chesire*, 707 F. Supp. 235 (M.D. La. 1989); *see also United States v. Cruz*, 982 F. Supp. 946 (S.D.N.Y. 1997) (disqualifying attorney when wife of former client was testifying as a government witness with the hope that the government would file a motion to reduce the husband's sentence based upon her cooperation).

However, in the guilty plea context, the Eleventh Circuit has made clear that a defendant may waive his right to conflict-free counsel, if such a waiver is knowingly and intelligently made. *United States v. Sims*, 143 Fed. Appx. 210, 217  (11th Cir. 2005) *citing United States v. Alred*, 144 F.3d 1405, 1411 (11th Cir. 1998).  In order for a waiver to be knowing and intelligent, "[t]he record must show that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." *Id.*

8

In *Woods v. United States*, 2010 WL 3927243 (6th Cir. Sept. 23, 2010), for example, the Sixth Circuit Court of Appeals held that a defendant who pled guilty waived his right to conflict-free counsel where his counsel also represented another defendant in a different criminal proceeding, who had provided the government with adverse information, which would have been used against the first defendant had the matter gone to trial.  The Court concluded that the defendant's counsel in the case only labored under a potential conflict which never blossomed into an actual conflict because the first defendant pled guilty, was made aware by the court of the potential conflict before pleading guilty, and declined his right to be represented by someone else. *Id.* at *10. Thus, under those facts the defendant knowingly and intelligently waived his right to conflict-free counsel.

### C.  Conclusions

In the case at bar, if Defendant Alvarez was proceeding to trial, disqualification of counsel would be appropriate since Roberto Rodriguez, M.D. will be a key government witness, and in the absence of a waiver by Rodriguez, present counsel could not cross-examine him or take any action which would adversely affect the efforts of Dr. Rodriguez to obtain a benefit as a result of his cooperation.

However, the facts which would lead to disqualification in the context of a trial do not preclude an effective waiver of the conflict in the present context of a guilty plea. Defendant Alvarez has confirmed that his decision to enter a guilty plea was not affected by the fact that Dr. Rodriguez was previously represented by his attorney; that he waives any conflict that exists based upon this prior representation; that he understands that his present counsel cannot take any action adverse to the interests of Dr. Rodriguez; and, that he desires to be represented by attorney Martinez in these proceedings.  The

9

Government does not contend that any plea agreement with Defendant Alvarez will result in any adversity with respect to Dr. Rodriguez, and thus the negotiation of a plea with respect to Defendant Alvarez does not result in any breach of the duty of loyalty owed by attorney Martinez to Dr. Rodriguez.  Since Dr. Rodriguez will no longer be testifying as a witness against Defendant Alvarez, and since Dr. Rodriguez has no direct knowledge of the activities of Defendant Alvarez, the undersigned concludes that the waiver of the conflict is valid, and that the right to counsel of choice should be respected.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that the Government's Motion for Inquiry is **GRANTED**.  Based upon that inquiry, Defendant Alberto Alvarez may continue to be represented by attorney Luis Martinez.

**DONE AND ORDERED** in chambers in Miami, Florida, on November 15, 2010.

_Andrea M. Simonton_

ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Ursula Ungaro
    United States District Judge
All counsel of record via CM/ECF